UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON
CRIMINAL ACTION NO.: 04-73

Eastern District of Kentucky
FILED

MAR 2 4 2005

AT COVINGTON
LESLIE G WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES OF AMERICA,                                      PLAINTIFF

V.

TROY PHILLIPS,                                              DEFENDANT

## REPORT AND RECOMMENDATION

On November 10, 2004, the defendant was indicted in federal court on various firearms charges. On February 9, 2005, the defendant filed a motion to dismiss the charges listed in the indictment. The defendant seeks an evidentiary hearing on his motion to dismiss. The motion to dismiss has been referred to the undersigned magistrate judge for initial review and consideration.[1]

On March 8, 2005, the court conducted a telephonic conference concerning defendant's request for an evidentiary hearing. Assistant U.S. Attorney Laura Voorhees participated on behalf of the United States, while Tim Schneider participated on behalf of the defendant. At the conclusion of the conference, the court determined to hold an additional telephonic hearing on the limited issue of whether there is a "rational distinction" between the Crescent shotgun seized from the defendant and an allegedly similar rifle which is not subject to federal prosecution. That hearing was held on March 17, 2005 at 10:00 a.m. with the same counsel participating along

---

[1] The order of reference inadvertently stated that the motion was "unopposed." The United States filed a response in opposition on February 21, 2005.

with A.U.S.A. Joyce Rybak,[2] and was recorded by court reporter Shandy Ehde.

Having heard oral argument and testimony through the March 17 telephonic hearing, I recommend that the defendant's motion to dismiss be denied.

### I. Background and Analysis

#### A. Count One

Count one (1) of the indictment charges the defendant with knowingly possessing firearms while subject to a domestic violence order ("DVO") in violation of 18 U.S.C. §922(g)(8). The defendant argues that Count 1 must be dismissed because the underlying DVO on which Count 1 is based is defective. First, the defendant contends that the domestic violence order is unduly ambiguous and vague, because it does not clearly set forth that possession of firearms, while being subject to the domestic violence order, is prohibited and will result in federal criminal prosecution.

According to both parties,[3] the first page of the domestic violence order states:

"WARNING TO RESPONDENT. . ... Federal law provides penalties for possessing, transporting, shipping, or receiving any firearm or ammunition (18 U.S.C. 992(g)(8)). Only the Court can change this Order."

The defendant claims that this language simply advises the defendant that he may be

---

[2]Ms. Rybak ordinarily represents the Alcohol Firearms and Tobacco agency, but was invited to participate as co-counsel in this hearing by Attorney Voorhees in light of the gun control issues presented.

[3]The referenced language is in bold print in the government's memorandum. The defendant failed to include a copy of the referenced DVO with his motion, and no other copy appears to have been filed of record to date. The court will assume for the purposes of this motion only that the parties have correctly represented the terms of the DVO.

subjected to penalties under federal law, without any indication if the penalties are civil or criminal.    However, the defendant's argument ignores the legal citation to the *criminal* code. The defendant further criticizes the penalty language for failing to specifically link the federal penalties with the domestic violence order. Again, however, this argument ignores the fact that the express federal criminal provision is cited in the DVO, and that the defendant could have reviewed the federal penalties by referencing the cited statute.

The defendant additionally argues that the domestic violence order is defective for the failure of the body of the order to mention weapons, and because an area referring to the possible surrender of a concealed carry permit is not marked.  The defendant concedes that a warning on the last page of the DVO states: "Pursuant to 18 U.S.C. Section 922(g)(8), it may be a federal violation to purchase, receive or possess a firearm or ammunition while subject to this order."[4] The defendant asserts, however, that this language is ambiguous as phrased, because it does not definitively state that it *is* a federal violation, but only that it "*may be*" such a violation.  The defendant argues that this supposed ambiguity is amplified by earlier language stating: "Only the Court can change this Order," suggesting that the provisions can be modified.  Notably, the defendant does not claim that the gun prohibition language was ever modified.

Finally, the defendant claims that Count 1 is defective because the DVO on which it was based was not imposed after a hearing which specifically apprised the defendant of the impact of that order on his right to possess weapons.  Rather, the defendant contends that the state court used a "summary court proceeding" to enter the DVO.

All of the defendant's arguments are premised on the assumption that it was necessary

---

[4]Again, the government indicates that the language is in bold type.

3

that the defendant be provided notice *in the DVO* that his conduct violated *the terms of the DVO*.

This assumption is incorrect. The indictment is not based on the defendant's violation of the

terms of his DVO, which charge presumably might be brought in state court. Instead, the

indictment charges the defendant with a violation of an independent federal law. Regardless of

what language was used in the DVO, 18 U.S.C. §922(g) itself clearly states that it shall be

unlawful for any person:

> (8) who is subject to a court order that -
>
> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)(I) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
>
> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury...
>
> *****
>
> To ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. §922(g)(8).

In *United States v. Baker*, 197 F.3d 211 (6th Cir. 1999), *cert. denied,*  528 U.S. 1197, 120

S. Ct. 1262 (2000), the Sixth Circuit rejected a similar challenge by a defendant convicted under

18 U.S.C. §922(g)(8) for possessing a firearm while subject to a domestic violence order issued

4

by a Kentucky court.[5]

> Baker believes that unless construed to allow an ignorance of the law defense, §922(g)(8) violates the due process principle requiring that individuals receive fair warning of the potential criminality of their conduct....
>
> *****
>
> Even those not versed in the law recognize the centuries-old maxim that "ignorance of the law is no excuse." This maxim, deeply embedded in our American legal tradition, reflects a presumption that citizens know the requirements of the law. The benefits of such a presumption are manifest. To allow an ignorance of the law excuse would encourage and reward indifference to the law. Further, the difficulty in proving a defendant's subjective knowledge of the law would hamper criminal prosecutions.
>
> Despite these important benefits, the ignorance maxim is not absolute. The United States Supreme Court has abrogated the maxim when faced with a law so technical or obscure that it threatens to ensnare individuals engaged in apparently innocent conduct. *See Bryan v. United States,* 524 U.S. 184, ___, 118 S.Ct. 1939, 1946-47, 141 L.Ed.2d 197 (1998). . ..

*Id.* at 218-219.

The Sixth Circuit discussed but expressly rejected the conclusion of a minority of courts

that

> §922(g)(8) is an obscure law that penalizes the generally lawful practice of possessing firearms, and thus must allow for an ignorance of the law defense to avoid a conflict with the due process principle of fair warning. *See United States v. Ficke,* 58 F. Supp.2d 1071 (D. Neb. 1999); *United States v. Emerson,* 46 F. Supp.2d 598, 613 (N.D. Tex. 1999). These courts rely...on Judge Posner's dissent in *United States v. Wilson.* [159 F.3d 280, 293-96 (7th Cir. 1998)]. The defendant in *Wilson* was convicted of violating §922(g)(8) despite never receiving any notice of his disqualification from possessing firearms. The defendant challenged his conviction on due process grounds. Observing that ignorance of the law is traditionally no excuse to criminal liability, the United States Court of Appeals for the Seventh Circuit affirmed the defendant's conviction. *See id.* at 288-89.

*Id.* at 219. After briefly discussing Judge Posner's dissent, the Sixth Circuit in *Baker* rejected

Judge Posner's reasoning and affirmed the conviction:

---

[5]The defendant cites no case authority in support of any of his arguments.

We find that the United States's prosecution of Baker under §922(g)(8) did not result in a violation of his due process rights, thus we need [not] consider interpreting the statute to recognize ignorance of the law as an excuse. Baker received adequate notice with respect to the requirements of §922(g)(8). Each of the domestic violence protection orders entered against him featured a bold print warning that he could not lawfully possess firearms. Such warnings were never provided to the defendant in *Wilson*. Indeed, Judge Posner recognized that printed warnings on domestic violence protection orders would cure what he otherwise considered the due process infirmity of a §922(g)(8) prosecution. ....

*****

Moreover, even had Baker not received direct notice of his firearms disability [by the warning in his VPO], his prosecution under §922(g)(8) would still not have resulted in a violation of his due process rights. The fact that Baker had been made subject to a domestic violence protection order provided him with notice that his conduct was subject to increased government scrutiny. Because it was not reasonable for someone in his position to expect to possess dangerous weapons free from extensive regulation, Baker cannot successfully claim a lack of fair warning with respect to the requirements of §922(g)(8). *See United States v. Meade*, 175 F.3d 215, 225-226 (1st Cir. 1999)(upholding §922(g)(8) against due process challenge after finding individual under domestic violence protection order "would not be sanguine about the legal consequences of possessing a firearm"); *United States v. Bostic*. 168 F.3d 718, 722 (4th Cir. 1999)(upholding §922(g)(8) against due process challenge after concluding that "[l]ike a felon, a person [subject to a domestic violence protection order] cannot reasonably expect to be free from regulation when possessing a firearm"); *see also Wilson*, 159 F.3d at 288-89 (upholding §922(g)(8) against due process challenge; *United States v. Spruill*, 61 F. Supp.2d 587 (W.D.Tex. 1999)(same).

*Id.* at 219-220. In short, the Sixth Circuit agreed with the reasoning of other courts that the mere fact that a defendant has been made subject to a domestic violence order - regardless of whether that DVO itself provides *any* notice of the applicability of §922(g)(8) - provides the defendant with notice sufficient to survive a due process challenge to the application of the federal statute. *See also United States v. Napier*, 233 F.3d 394 (6th Cir. 2000)(no actual notice of gun prohibition required; status of defendant subject to DVO sufficient to preclude claim of lack of fair warning with respect to 922(g)(8) disability); *United States v. Hopper*, 28 Fed. Appx. 376, 2001 U.S. App. LEXIS 27594 (6th Cir., December 28, 2001)(same).

6

The Sixth Circuit's reasoning is amplified in its rejection of Baker's argument that the

DVO proceeding itself should have afforded greater procedural protections - again, nearly the

identical argument raised by defendant Phillips in this case:

> Baker complains that the civil proceeding by which he was made subject to a
> domestic violence protection order did not afford him the constitutional
> safeguards associated with a criminal prosecution. Though he acknowledges that
> civil proceedings generally do not feature such safeguards, Baker argues that
> because his status as one subject to a domestic violence protection order
> constituted the basis of a federal criminal prosecution, the proceeding by which he
> attained that status must consist of the same procedural safeguards as a criminal
> prosecution.
>
> We disagree. The fact that Baker's status makes him criminally liable for
> possessing a firearm does not imbue the process by which he attained that status
> with constitutional significance. Indeed, a legally-relevant status under §922(g)
> may arise in the absence of any formal proceeding. For example §922(g)(3)
> prohibits an individual addicted to controlled substances from possessing a
> firearm, yet an individual attains the status of a drug addict without a court
> proceeding of any kind.

*Id.* at 216-217 (footnote omitted). The court noted, as the United States does here, that under

Kentucky law the defendant was made subject to the DVO only after the state court determined

by a preponderance of the evidence that he had committed domestic abuse and posed a threat of

continued abuse. The state court determination occurred following a hearing of which the

defendant was notified. *See id.* at 216, n.3, citing Ky.Rev. Stat. Ann. §§403.745, 750 (Michie

1998).

### B. Count 2

The defendant also seeks the dismissal of Count two (2) of the indictment. Count 2

charges the defendant with the possession of two firearms, as defined under the provisions of 26

U.S.C. §5845(a)(2), (a)(5), and §5845(e) of the National Firearms Act ("NFA"), Title 26, United

States Code, §§5801 et seq. The defendant argues that he cannot legally be charged with

7

possession of either of the guns.

### The Sawed-off Stevens Shotgun

The defendant first argues that his possession of one of the guns, a Stevens Model 57SE,

Savage Arms (Westfield, MA), 12 Gauge shotgun (hereinafter the "Stevens shotgun"), was legal

because that weapon was not functionally operable when seized. The weapon in question

measured approximately 23 1/4 inches overall with a barrel length of approximately 13 inches,

with no visible serial number. The stock on the weapon was broken and the barrel had been

unevenly cut when the barrel was sawed off; the defendant contends that the firearm was not

readily operable due to its missing slide assembly.

Under the provisions of the NFA, a shotgun is defined to include "any such weapon

which may be readily restored to fire a fixed shotgun shell." 26 U.S.C. §5845(d). The term

"readily restorable" is not defined in the NFA or in corresponding regulations, but is defined in

three long-standing ATF Rules. *See* ATF Rule 82-2 *reprinted in* 1982-1 A.T.F. Q.B. at 8; 82-8

*reprinted in* 1982-2 A.T.F. Q.B. at 49; 83-5, *reprinted in* 1983-3 A.T.F. Q.B. at 35. The A.T.F.

rulings deal with the same language used in the machine gun definition of the NFA, and state that

"readily restorable... defines weapons which previously could shoot automatically but will not in

their present condition."

Courts addressing similar issues have rejected claims that a weapon which is inoperable

at the time of seizure does not fall within the definition of a "shotgun" under the NFA. *See e.g.,*

*United States v. Catanzaro*, 368 F. Supp. 450 (D. Conn. 1973)("inoperable" shotgun missing

parts which could be easily purchased and which could be reassembled in less than one hour fell

within definition); *United States v. Smith*, 477 F.2d 399 (8th Cir. 1973)(submachine gun was

8

readily restorable to shoot despite process of restoration requiring eight hours' work in machine shop); *United States v. Barno*, 450 F. Supp. 1326 (D.D.C. 1972)(weapon rendered operable within 15 minutes by inserting an improvised firing pin).

The Sixth Circuit arrived at a similar conclusion when addressing the issue of "readily restorable to fire" in the context of a machine gun. *See United States v. Cook*, 999 F.3d 541 (6th Cir. 1993)(unpublished, text available on Westlaw)(affirming conviction of defendant who possessed all parts necessary to convert a rifle into a fully automatic weapon except for a piece known as an autosear, agreeing with conclusion of other courts finding disassembled guns to be "readily restorable" under NFA); *United States v. One TRW, Model M14, 7.62 Caliber Rifle, Serial Number 1488973 from William K. Alverson,* 294 F. Supp.2d 896, 900 (E.D. Ky. 2003)(citing ATF rulings with approval).

The indictment is not subject to dismissal on the basis of defendant's motion. Rather, the degree to which the referenced weapon was "readily restorable" can be addressed at trial. Apart from the abundant case law that a weapon falls within the NFA if it is "readily restorable" to operation, the United States indicates that its proof is that the Stevens shotgun was, in fact, operable at the time of seizure. The government states that its case agent was able to open the bolt manually, place a shot gun shell in the chamber, close the bolt manually, and fire with the pull of the trigger, thus demonstrating that the weapon was operable without modification. The defendant is free to dispute this proof at trial, and/or to put on proof that the weapon was not "readily restorable" as that phrase has been defined under the law.

**The Crescent Shotgun**

The defendant also argues that he cannot legally be charged with the possession of the

9

second gun listed in the indictment, a "Crescent Arms, Certified Shotgun, 410 gauge shotgun."
The indictment charges that the Crescent Shotgun was not registered in the National Firearms
Registration and Transaction Record in violation of federal law. The defendant does not dispute
that the subject weapon is on the federal list of weapons which must be registered, but argues that
the charge violates the Equal Protection Clause because similar weapons are not included on the
federal list.[6] The defendant describes the inclusion of the referenced weapon as "out of place" on
a list which includes "primarily machine guns, submachine guns, howitzers and anti-tank rifles."

In support of his argument, the defendant claims that the Thompson G2 Contender, which
is not on the list, is "virtually identical" to the Crescent weapon. Defendant argues that the
Equal Protection Clause is violated by the prosecution of the defendant for possession of the
Crescent weapon, in light of the existence of the Thompson G2 and other unspecified
"functionally identical" weapons.

The precise nature of defendant's equal protection claim was initially unclear, but was
subsequently clarified by telephonic oral argument. Before turning to the defendant's primary
equal protection claim, the court will briefly examine two potentially related claims under the
equal protection clause.

First, to the extent that the defendant claims that the prosecution of the possessor of a
Crescent weapon somehow constitutes selective prosecution, his claim is without merit. In

---

[6]The Equal Protection Clause is contained in the Fourteenth Amendment, which applies
only to the states. Although there is no explicit guarantee of equal protection in the Fifth
Amendment, which applies to the federal government, the United States Supreme Court has
found that the Due Process Clause of the Fifth Amendment encompasses an equal protection
guarantee. *See Baker,* 197 F.3d at 215 n.1 (*citing Bolling v. Sharpe*, 347 U.S. 497, 499
(1954)(additional citations omitted)).

*Baker*, the court reiterated the three elements of an equal protection claim based on selective

prosecution: 1) that the prosecutor has singled out a person belonging to an identifiable group,

such as those of a particular race or religion, for selective prosecution; 2) that he has initiated the

prosecution with a discriminatory purpose; and 3) that the prosecution has a discriminatory effect

on the suspect group. *See id.* at 215. In this case, defendant Phillips has produced no evidence

whatsoever to rebut the "strong presumption" that the prosecutor has properly discharged her

duties. Therefore, the court rejects any claim based on a theory of selective prosecution.

The court additionally rejects any claim that persons in possession of Crescent weapons

belong to a suspect class. There is no fundamental right to possess a shotgun, an assault weapon,

or any other specific firearm. *Id.* at 216; *United States v. Warin*, 530 F.2d 103, 106-07 (6th Cir.

1976)(finding that Second Amendment does not guarantee a personal right to bear arms). "And

the United States Supreme Court has yet to recognize as a suspect class individuals subject to

domestic violence protection orders." *Id.* Because the charge involving the Crescent shotgun

affects neither a fundamental right nor a suspect class, the defendant's equal protection challenge

warrants only rational basis review, at most. *See id.*

As clarified through oral argument, defendant's primary argument is that the

government's decision to classify the Crescent weapon as illegal- while permitting the possession

of functionally equivalent weapons without fear of prosecution - does not surpass even the

modest hurdle of rational basis review. By contrast, the United States argues that the Crescent

weapon has been rationally categorized within the definition of "any other weapon" as defined

under 26 U.S.C. §5845(a)(5) and (e). In order to resolve this dispute, the court heard limited

testimony on March 17 by witness Earl L. Griffith, an ATF agent with the Firearms Technology

11

Branch. In addition to his current work categorizing and classifying firearms under the Gun
Control Act and National Firearms Act, Agent Griffith has previous experience as an arms
control inspector in the State Department as well as experience in the military.

Shortly before the hearing, the United States alerted this court to a Sixth Circuit case
which rejected a similar equal protection challenge brought by gun manufacturers seeking to
overturn the semi-automatic assault weapons ban enacted in Title XI of the Violent Crime
Control and Law Enforcement Act of 1994. *See Olympic Arms v. Buckles*, 301 F.3d 384 (6th Cir.
2002). In that case, the Sixth Circuit acknowledged that a number of courts, including the lower
court in *Olympic Arms,* have held that a claim based on the classification of things rather than on
the classification of people simply is not cognizable under the equal protection clause of the Fifth
Amendment. *Id.* at 388. However, the court declined to determine the scope of the equal
protection clause, concluding instead that even if equal protection analysis applied, the
legislation met its requirements. *Id.*

Likewise in this case, it is unnecessary to determine whether the defendant's claim falls
within the scope of equal protection review. Assuming that the claim is otherwise cognizable, it
fails on the merits because the distinction between the regulated Crescent shotgun and the
unregulated Thompson G2 weapon is rational.

There is no dispute that the statutory definition of "any other weapon" governed by the
NFA clearly is not strictly limited to machine guns and the like but also includes "a weapon
capable of being concealed on the person from which a shot can be discharged through the
energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or
redesigned to fire a fixed shotgun shell." The definition does not include a pistol having a rifled

12

bore, rather than a smooth bore. Agent Griffith testified without contradiction that the Crescent

weapon has a smooth bore designed to chamber a .410 gauge shotgun shell, and is classified by

ATF as an NFA weapon.

Both parties also agree with Agent Griffith's testimony that unlike the Crescent shotgun,

the Thompson G2 Contender is a pistol with a rifled barrel. As a rifled-barreled pistol, the

Thompson weapon does not fall within the definition of "any other weapon" under the NFA.

The parties disagree on whether the distinction between a rifled barrel gun like the Thompson G2

model and the smooth-bored Crescent shotgun is a "rational" one to draw. The defendant argues

that the Thompson G2 is "virtually identical" or "functionally identical" to the Crescent shotgun.

The United States persuasively argues that the distinction between a rifle-barrel and a

smooth bore weapon designed to chamber a shotgun shell is rational. Agent Griffith testified

that smooth-bore weapons, such as the Crescent, act differently in terms of shot patterning than

do rifle-bore weapons. Agent Griffith further testified that the Crescent weapon is not "virtually

identical" to the Thompson G2 pistol, but is in fact a different weapon based upon its rifling and

barreling characteristics.   According to Agent Griffith, rifle-bore weapons tend to twist the shot

and keep the shot pattern more condensed; such weapons tend to hold the shot longer and further

than do smooth-bore weapons.   By contrast, smooth-bore weapons tend to produce shot which

goes down the barrel and immediately starts to spread, producing a wider area of shot. By way of

analogy, Agent Griffith explained that a Thompson G2 weapon is designed to produce a "laser

point" type of shot for recreational or sporting use, whereas a smooth-bore shotgun such as the

Crescent produces a flashlight-type of effect. The flashlight beam effect can be more dangerous

due to its much wider spread or spray of shot.

13

On cross-examination, Agent Griffith testified that a Thompson G2 or other "rifle-bore" weapon could theoretically be "shot-out" - a term not used by the ATF, but construed by Agent Griffith to refer to a rifle that has been shot so many times that its bore becomes smooth over time. Agent Griffith suggested such a process would require the firing of "thousands of rounds." However, Agent Griffith also testified that he has never seen a "shot-out" rifle become *completely* smooth-bore. If a pistol capable of firing a shotgun shell did become completely smooth-bored, Agent Griffith confirmed that it would then fall within the same definition of weapons required to be registered on the federal list.

Agent Griffith's testimony leads inescapably to the conclusion that the distinction between the regulated Crescent shotgun and the unregulated Thompson G2 is indeed a rational one which easily passes constitutional scrutiny.

In the closely analogous *Olympic Arms* decision, the court explained the heavy burden which a person challenging legislation must carry:

> [I]n order to prevail on their due process claims, the plaintiffs "must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U.S. at 11, 99 S.Ct. 939. As explained by the Supreme Court in *Clover Leaf*:
>
> > Although the parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational. . .they cannot prevail so long as "it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable." . . .Where there was evidence before the legislature reasonably supporting the classification, litigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislation was mistaken.
>
> *Clover Leaf Creamery*, 449 U.S. at 464, 101 S. Ct. 715. Moreover, the law is entitled to a "strong presumption of validity." *Heller v. Doe*, 509 U.S. 312, 319,

113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)

*Id.* at 389 (additional citations omitted). In reviewing the legislative history of the Violent

Crime Control and Law Enforcement Act of 1994 and the formulation of the federal list of

banned assault weapons, the Sixth Circuit concluded that it was "entirely rational for Congress,

in an effort to protect public safety, to choose to ban those weapons commonly used for criminal

purposes and to exempt those weapons commonly used for recreational purposes." *Id.*

The court flatly rejected as "without merit" the argument - similar to that made by

defendant Phillips in this case - "that several of the weapons on the prohibited list are the

functional equivalents of weapons specifically protected under the 1994 Act." *Id.*   The court

explained:

> The fact that many of the protected weapons are somewhat similar in function to
> those that are banned does not destroy the rationality of the congressional choice.
> A classification does not fail because it "is not made with mathematical nicety or
> because in practice it results in some inequality."

*Id.* at 390.

The *Olympic Arms* court also rejected a challenge to the federal list's inclusion of

weapons with more than one of certain enumerated features, similar to the defendant's challenge

in this case to the inclusion of weapons with a "smooth-bore" characteristic.

> Each of the individual enumerated features makes a weapon potentially more
> dangerous. Additionally, the features are not commonly used on weapons
> designed solely for hunting. Congress could easily have determined that the
> greater the number of dangerous add-ons on a semi-automatic weapon, the greater
> the likelihood that the weapon may be used for dangerous purposes. Further,
> Congress may work incrementally in protecting public safety. . .. Congress's
> decision first to target weapons commonly used for criminal activity or, likewise,
> those most heavily loaded with dangerous features is within their legislative
> authority. . ..

*Id.* at 390.

In light of *Olympic Arms* and the uncontested testimony of Agent Griffith, I reject the defendant's claim that the distinction between Crescent shotgun and the Thompson G2 lacks a rational basis. The defendant has not carried his burden of proof to show that the statutory distinctions between the types of firearms lack any rational relationship to a legitimate governmental interest. *See also generally Baker,* 197 F.3d at 216 (finding §922(g)(8) to be rationally related to the government's legitimate interest in curtailing the incidence of domestic violence) and at 220 (holding that defendant failed to bear burden of proof to show that provision prosecuting offenders who possess assault weapons rather than ordinary firearms lacked a rational relationship to a legitimate governmental interest, because he did not negate "every conceivable basis that might support" the provision).

### II. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED HEREIN THAT** defendant's motion to dismiss the charges listed in the indictment [DE #19] be **denied.**

**OBJECTIONS** to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of the same or further appeal is waived. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Secretary of Health & Human Serv.*, 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within ten (10) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

16

This ___24___ day of March, 2005.

J. GREGORY WEHRMAN
UNITED STATES MAGISTRATE JUDGE

17